[Civ. No. 40897. Second Dist., Div. Five. July 30, 1973.]

JEAN WILLIS, Plaintiff and Respondent, v.
BANK OF AMERICA, Defendant, Cross-complainant and Respondent;
LOIS CARVER SMITH, Individually and as Administratrix, etc.
Cross-defendant and Appellant.

## COUNSEL

Young, Henrie & McCarthy and Bert W. Humphries, Jr., for Cross-defendant and Appellant.

Rose, Klein & Marias and Robert M. Simpson for Plaintiff and Respondent.

Harris B. Taylor, Bert C. Johnson and Robert H. Fabian for Defendant, Cross-complainant and Respondent.

## OPINION

**HASTINGS, J.**—The basic facts are not in dispute. On February 13, 1968, one Barney T. Carver (hereinafter "Carver") was hospitalized in the Veterans Administration Hospital, Long Beach. On March 5, 1968, he executed a general power of attorney in favor of Jean Willis, plaintiff and respondent. On March 21, 1968, plaintiff presented the power of attorney to a Mr. Smith, manager of South Gate-Walnut Park Branch of Bank of America (hereinafter "defendant bank") and sought to withdraw $3,000 from Carver's commercial account located at said bank. Mr. Smith refused the request but gave plaintiff two authorization cards that upon proper signature by Carver would transfer the account to a joint tenancy account between Carver and plaintiff. On March 26, 1968, at the hospital, Carver signed the two authorization cards by his "X" as provided by law, and a physician's statement was signed by a Dr. Yrigoyen to the effect that Carver was competent and needed representation. Photostatic copies were immediately made of the cards and the doctor's statement, but somehow the original cards were lost between the time of photostating and March 28. On March 28, a Mr. Incledon, a friend of plaintiff, at her request presented the photostatic copies of the cards and doctor's statement to Mr. Smith at defendant bank and explained that the originals were lost. Mr. Smith rejected the photostats but furnished a second set of cards for Carver's signature. Later the same day, Carver signed the second set of cards with an "X," and Dr. Yrigoyen executed another statement.

Carver died at 7:55 p.m. on said date (March 28, 1968). On March 29, 1968, Mr. Incledon presented the new cards and doctor's statement to Mr. Smith and notified him that Carver had died the night before. Mr. Smith refused to accept the cards and declined to transfer the account. When advised of this, plaintiff went to the bank and again presented the signed cards and doctor's statement and the photostatic copies of the previously signed cards and doctor's statement and demanded that the bank transfer the account as authorized. Mr. Smith again refused to honor either set. Other demands were also made at later dates, but defendant bank refused to change its position.

Subsequently, cross-defendant Lois Carver Smith (hereinafter "Administratrix") was appointed administratrix of the estate of Barney T. Carver, and on or about June 17, 1968, defendant bank paid the balance in the account, to wit, $12,499.50, to Administratrix.[1]

On August 12, 1968, plaintiff commenced this action against defendant bank to recover the entire proceeds plus interest. Administratrix was not named as a defendant. Defendant bank filed an answer and a cross-complaint against Administratrix for indemnification in the event bank was found liable to plaintiff. Plaintiff was not named as a cross-defendant by bank. Judgment was awarded plaintiff for the total balance in the account plus interest by the trial court acting without a jury, and defendant bank was awarded judgment against Administratrix in the amount of $12,499.50. Administratrix appealed.

1. Administratrix claims that the estate was an indispensable party to plaintiff's complaint and failure to join her voids the judgment in favor of plaintiff.

Plaintiff alleged one cause of action against defendant bank; it was entitled: "COMPLAINT (Money Damages)" The three paragraphs spelling out the nature of the action are as follows:

### "III.

On or about March 26, 1968, and March 28, 1968, said Barney T. Carver signed a bank joint tenancy deposit card with plaintiff and duly and regularly created and converted said bank account, aforesaid, into a joint banking account of himself and plaintiff, with right of survivorship to the whole. Notice thereof was duly and regularly given the defendant, at said South Gate-Walnut Park Branch, both on March 26, 1968 and on March 28, 1968.

### "IV.

Said Barney T. Carver died on March 28, 1968. As a result of said death, plaintiff, as surviving joint tenant, became entitled to, and is entitled to receive, the entire proceeds of said banking account in the sum of approximately $12,000.00, from and after March 28, 1968.

---

[1]Administratrix deposited these funds into two accounts (savings and checking), at defendant bank's Pomona branch.

"V.

On or about April 24, 1968, May 1, 1968, and May 14, 1968, plaintiff gave defendant written notices of the death of said Barney T. Carver and demanded payment of the proceeds on deposit in said banking account, aforesaid. Despite said notices, defendant has failed and refused, and continues to fail and refuse, to pay or transmit to plaintiff said banking account deposit proceeds, or any part thereof."

Administratrix' contention is that plaintiff's cause of action is one to try title to personal property, i.e., the bank account, and therefore it is necessary to name as parties defendant, the record title holder (the estate of Barney T. Carver), and the possessor of the asset (Bank of America, custodian for the estate of Barney T. Carver).

Plaintiff's complaint does not plead a cause of action to quiet title. It is more in the form of a common count for money had and received and withheld from the party that is entitled thereto.

At the commencement of the trial, counsel for Administratrix moved for dismissal on the theory that the estate was an indispensable party. The court requested counsel for plaintiff to respond to the motion, which he did by stating as follows: "I would oppose the motion to dismiss. The nature of the action is the claim against the bank to the right of the joint tenancy bank account. And, as such, is not an asset of any estate. It would pass to the surviving joint tenant by operation of law. It would not be a part of the estate. For that reason, the estate would not be an indispensible party." The court then denied the motion without comment.

There are no findings of fact and conclusions of law. Where findings are waived, it will be assumed that the trial judge found every fact essential to the support of the judgment, and findings will be implied in favor of the successful litigant upon all the issues raised at the pleading. (*Snyder* v. *Snyder* (1951) 102 Cal.App.2d 489, 491 [227 P.2d 847]; *Annin* v. *Belridge Oil etc. Union* (1953) 119 Cal.App.2d Supp. 900, 906 [260 P.2d 295].)

Section 852 of the Financial Code essentially provides: "When a deposit is made in a bank in the names of two or more persons, . . . in such form that the moneys in the account are payable to the survivor . . . then such deposit and all additions thereto shall be the property of such persons as joint tenants. The moneys in such account may be paid to or on the order of any one of such persons during their lifetimes or to or on the order of any one of the survivors of them after the death of any one or more of them. . . .

"Payment of all or any of the moneys in such account *as provided in the preceding paragraph* of this section shall discharge the bank from liability with respect to the moneys so paid, . . ." (Italics added.)

It is implicit from the judgment that the trial court found that Carver had established a joint tenancy account with defendant bank prior to his death; that the bank did not make payment to plaintiff as survivor as required, and that defendant was not discharged from its liability to pay the moneys to plaintiff.[2] Plaintiff is suing bank for the moneys vested in her and to which she is entitled. If the bank has paid the money to another, that does not deprive plaintiff of judgment, provided she can prove her cause of action. No interest in the bank account passed to the estate because of its joint tenancy nature. The gravamen of this action is not in "quiet title."

Code of Civil Procedure section 389, subdivision (a), as pertinent here, states: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties . . . ."

█ Plaintiff framed her complaint so that it was consistent with the rights afforded her under section 852 of the Financial Code. The bank was not discharged from its liability to her with respect to the moneys in the account solely because the funds were paid to the Administratrix.

It has been held in California that a depositor seeking to recover moneys deposited in a bank and which have been withheld from him by the bank may plead a common count for moneys had and received. (*Bank of America* v. *Municipal Court* (1939) 30 Cal.App.2d 333, 335 [86 P.2d 144]; *Lynch* v. *Wells Fargo Bk. & Union T. Co.* (1931) 114 Cal.App. 565, 574 [300 P. 74].) Plaintiff, as surviving joint tenant and entitled to the account funds, stands in the same shoes as a depositor.

The trial court's judgment in finding defendant bank liable to plaintiff for the balance in the joint account plus interest afforded complete relief to the parties under the cause of action pleaded by plaintiff. It thus follows that the estate was not an indispensable party.

█ 2. Administratrix argues that the trial court committed reversible error by excluding testimony on possible undue influence of one kind or

---

[2]Administratrix does not challenge on appeal the court's obvious finding that a valid joint tenancy account had been established, except on the ground of possible undue influence discussed later.

another exerted on Carver by plaintiff, who alone stood to unduly benefit from the joint tenancy account. This issue was not pleaded, nor did Administratrix seek to amend prior to trial or during trial so that it could be considered. The bank did not raise the issue as a defense, nor was it pleaded in the cross-complaint nor raised in the answer thereto.

■ The defense of undue influence is "new matter constituting a defense" within the meaning of Code of Civil Procedure section 437, which was in effect at the time of this action. (Said section was repealed in 1971.)

"As a general rule an issue not presented by the pleadings cannot be considered upon appeal. [Citations.] Also where fraud or undue influence, or that a party has suffered injury through the abuse of confidence by another is relied upon by a party, he must plead accordingly. [Citations.]" (*Munfrey* v. *Cleary,* 75 Cal.App.2d 779, 784-785 [171 P.2d 750].)

■ It is questionable if the evidence referred to by Administratrix raised this issue. Counsel for Administratrix sought to elicit from Dr. Yrigoyen if his records indicated Carver's next of kin. Counsel's offer of proof to the materiality of this question stated it was relevant as to whether there was an attempt to preclude any equalizing influence at the time the bank cards were signed. The court denied further testimony on this point. Later in the trial, Administratrix' counsel tried to offer in evidence the circumstances surrounding the execution of the power of attorney in order to prove Carver's *intent* in signing the various documents. The court excluded this evidence because no issue concerning the power of attorney was before the court.

It must be remembered that Administratrix seeks to raise this issue in the cause of action by plaintiff against defendant bank, to which Administratrix is not a party. If successful, it would negate the bank's obligation to pay part or all of the moneys to plaintiff. *Moss Estate Co.* v. *Adler* (1953) 41 Cal.2d 581, 584 [261 P.2d 732], is directly in point. The court states: "Defendant contends, however, that it is the duty of a court of equity, whenever it is suggested that a plaintiff is guilty of fraudulent or otherwise improper conduct with respect to his claim, to inquire into the facts with respect thereto. [Citations.] This rule necessarily presupposes, however, that the facts indicating improper conduct on the part of the plaintiff are properly before the court. [Citations.] Otherwise, a defendant could evade the rule that fraud must be specifically pleaded merely by offering to prove facts showing fraudulent conduct on the part of the plaintiff. In the present case there is nothing in the complaint, the answer, or the evidence introduced under the pleadings that indicates in any way

that plaintiff or its agent was guilty of any fraudulent or improper conduct, and accordingly, the trial court was under no duty to inquire into facts outside of the scope of the pleadings." The trial court here did not commit error in refusing to admit the evidence offered by Administratrix.

■ 3. Administratrix urges that the bank was negligent and therefore is precluded from indemnity from Administratrix. ■ This requires only a brief response. As stated earlier, it is a well-established rule that where findings are waived it will be assumed that the trial judge found every fact essential to the support of the judgment, and findings will be implied in favor of the successful litigant upon all the issues raised.

At the trial, defendant bank cited and orally briefed for the court's benefit *First Sav. & Loan Assn.* v. *Bank of America* (1970) 4 Cal.App.3d 393 [84 Cal.Rptr. 532]. In this case, First Savings & Loan Association (hereinafter "First") was allowed restitution from Bank of America (hereinafter "Bank"). Briefly, the facts are as follows:

Bank obtained a judgment against one Bell for approximately $3,600. Bank levied a writ of execution on First, which had an account standing in the names of Barbara Bruch and Robin Elizabeth Bell, Trustees for Robin Elizabeth Bell, and First paid the moneys from said account through the sheriff to Bank. The trustees brought suit against First and First cross-complained against Bank for restitution. The appellate court in affirming the restitution stated at page 395: "The Bank correctly points out that the older California cases made a distinction between a mistake of law and a mistake of fact, and allow restitution only for mistakes of fact. However, the recent California cases appear to be following the more modern doctrine that mistakes of law and fact should be treated alike and emphasizing other factors in determining whether restitution should be granted. We think that this doctrine, set forth in 3 Corbin on Contracts (1960 ed.) page 752 [fn. omitted], has great merit and is the one followed by the trial court in the instant case. In *American Oil Service* v. *Hope Oil Co.*, 233 Cal.App.2d 822 [44 Cal.Rptr. 60], an overpayment was made because the accountant misconstrued the terms of a contract. This would appear to be a clear mistake of law. The court, however, after setting forth the applicable rules [fn. omitted], then went on to characterize it as a mistake of fact and stressed the desirability of an equitable adjustment. In the recent case of *Finnegan* v. *Spiegl Farms, Inc.*, 234 Cal.App.2d 408 [44 Cal.Rptr. 645], this court permitted restitution of money paid out on a clear mistake of law without any reference to the old distinction between mistakes of law and fact. . . .

"The Bank argues that its change of position in the instant case was such as to make restitution inequitable under the particular circumstances. We

do not think that the uncontroverted facts indicate any substantial or prejudicial change of position by the Bank. . . . Thus, the Bank has not met the burden of establishing that it has so changed its position to its detriment that restitution would be unjust (*Doyle* v. *Matheron,* 148 Cal. App.2d 521, 523-524 [306 P.2d 913])."

Administratrix is in the same position as Bank in the quoted case. ██ A review of the record does not indicate that restitution from Admininistratrix would be inequitable or unjust.

Nor can we find, in the absence of findings, that defendant bank was negligent. The payment of the moneys by bank to Administratrix could have been by mistake of law or mistake of fact. There is sufficient evidence to support the trial court's judgment on the cross-complaint.

Inasmuch as we affirm the trial court's judgment in favor of plaintiff on the complaint and in favor of bank on the cross-complaint, it is unnecessary to discuss and consider the issues raised by defendant bank in its reply brief or to take any action on respondent Willis' motion to strike portions of respondent bank's brief and motion for leave to file supplemental brief.

The judgment is affirmed.

Stephens, Acting P. J., and Asby, J., concurred.